Stephen G. Opperwall (SBN 100057)
LAW OFFICES OF STEPHEN G. OPPERWALL
4900 Hopyard Road, Suite 100
Pleasanton, California 94588
Telephone: (925) 417-0300
Facsimile: (925) 417-0301
E-mail: steve.opperwall@comcast.net

Attorneys for Creditor
Professional Bank

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br><br>Evander Frank Kane,<br><br>    Debtor,<br>———————————————<br><br>Professional Bank,<br><br>    Plaintiff,<br><br>v.<br><br>Evander Frank Kane,<br><br>    Defendant. | No. 21-50028 SLJ 7<br><br>Chapter 7<br><br><br><br>Adv. Proc. No.<br><br>Complaint for<br>1) Nondischargeable Debt<br>2) Declaratory Relief<br>3) To Deny Discharge<br>4) Determine Validity of Lien<br>5) Injunctive Relief<br><br>Demand for Jury Trial |

## INTRODUCTION

1. This Adversary Proceeding and Complaint are brought by secured creditor Professional Bank ("Professional Bank") as Plaintiff against Debtor and Defendant Evander Frank Kane ("Kane").

1

Complaint including Demand for Jury Trial

## PARTIES

2. Plaintiff Professional Bank ("Professional Bank") is an active Florida corporation in good standing doing business as a full-service community bank with its corporate headquarters in Coral Gables, Florida.

3. Defendant and Debtor Evander Frank Kane ("Kane") is an individual, who currently resides in Santa Clara County, California at 2301 Richland Avenue, San Jose, California 95125 according to his bankruptcy filing in the main bankruptcy case, which is Case Number 21-50028 SLJ 7 filed in the U.S. Bankruptcy Court for the Northern District of California (San Jose Division).

## SUMMARY AND OVERVIEW

4. Professional Bank is a secured creditor of Defendant and Debtor Evander Frank Kane. In March 2019, Kane borrowed $1,500,000 from Professional Bank in 2019. As collateral and security for the payment of the loan, and as the inducement for Professional Bank to lend Kane the money, Kane gave Professional Bank a security interest in Kane's income stream of $49,000,000 over seven years that Kane has from the San Jose Sharks ("Sharks"). Loan payments were to be made automatically from Kane's income from the Sharks, with automatic payments going from the Sharks to Professional Bank. Almost immediately after that loan closed, Kane breached the terms of the loan, failed to make required payments, and revoked the automatic payment provisions that had been promised and agreed to

as inducement for the loan. As alleged below, the expressed intent and plan by Kane and Kane's counsel are that Professional Bank will not be paid.

5. Kane is a professional hockey player on the San Jose Sharks ("Sharks") of the National Hockey League ("NHL"). Kane is in the third year of a seven year contract with the Sharks where Kane is paid approximately $7,000,000 per year as base compensation. Kane's contract with the Sharks is a standard NHL contract that essentially guarantees those payments to Kane even if Kane is unable to play.

## JURISDICTION AND VENUE

6. This court has jurisdiction for this Adversary Proceeding as a part of the main bankruptcy case pursuant to 28 U.S.C. Section 157 and 28 U.S.C. Section 1334.

7. Venue for this Adversary Proceeding is appropriate as part of the main bankruptcy case pursuant to 28 U.S.C. Section 1409.

8. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. Section 157.

9. This Adversary Proceeding is commenced pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001.

3

## FACTUAL BACKGROUND

10. In early 2019, Kane sought to borrow $1,500,000 from Professional Bank.

11. The terms that Kane promised and agreed to were that the loan would coincide with the remaining years on Kane's $49,000,000 player contract with the Sharks, and that the loan would be paid off by 2025. In addition, the loan was secured by, among other things, the stream of income that Kane has from the Sharks through the 2025 season. Also, the payments would be made automatically and directly to Professional Bank from the Sharks from the amounts that Kane was entitled to receive from the Sharks based on Kane's NHL contract. Also, Kane waived all legal provisions and potential objections that Kane might otherwise argue that might limit Professional Bank's ability to have a security interest in and to receive payments directly from the Sharks as part of Kane's stream of income from the Sharks.

12. Kane signed the documents on 3/26/19 and a notary acknowledged his signature.

13. As part of the loan, there was an advance reserve held by and paid to Professional Bank by Kane to cover the payments that would be due between the signing date and the payment due date of 10/15/19.

14. The Security Agreement gave Professional Bank a security

interest in Kane's payments from the NHL contract. The Security Agreement also provided for a security interest in other items, but the security interest in the stream of income from the Sharks to Kane was a main consideration for the loan.

15. The Security Agreement was accompanied by a UCC-1 Financing Statement filing with the California Secretary of State on 3/27/19. Other documents included the following: Automatic Transfer Authorization; Promissory Note for $1,500,000; Agreement to Waive Garnishment Protection; Cooperation Agreement; Errors and Omissions Agreement; Post-Closing Agreement; Direct Deposit Enrollment Agreement.

16. There were no payments due from Kane from the time of the closing of the loan through 10/15/19, because of the advance payment amount that had been retained by Professional Bank. By the time the payment for 11/15/19 was due, Kane was in default, including by him revoking the automatic payment that was to occur from the Sharks to Professional Bank for each payment. Kane has been in default ever since that date.

17. Based on the conduct of Kane after he received the money and before there was any additional performance by Kane, it is clear and undisputable that Kane made promises that he did not intend to perform. Kane had no intention of repaying the $1,500,000 loan from Professional Bank. Kane blocked the payment provision (direct payment to Professional Bank from the Sharks) before the first payment was due, and that has remained blocked

5

continuously since then.

18. Kane also misrepresented his financial circumstances and financial condition. He also overstated his assets, and he understated his liabilities.

19. It appears from conduct and circumstances that have become known since March of 2019 that Kane was likely insolvent when he obtained the money from Professional Bank, but that information was fraudulently concealed from Professional Bank.

20. It is appears likely from conduct and circumstances since March of 2019 that Kane intended to declare bankruptcy and intended to take the position that he was not going to pay Professional Bank and Kane's other creditors.

21. It appears likely that the initial planning of the bankruptcy was believed to be already in process and in progress when Kane requested the loan from Professional Bank. At around that same time, Kane was also borrowing enormous amounts of money from other banks including Centennial Bank, Zions Bancorporation, and South River Capital. Kane was also incurring enormous amounts of debt owed to other creditors. By all appearances, the plan back then was that these amounts were never going to be paid or paid back.

22. As of November 2019, Kane was already in default regarding Professional Bank before his first payment was due.

23. During late 2019 and throughout 2020, Kane and his legal representatives and legal counsel were supposedly "negotiating" for paying off the creditors, but instead they were in fact just creating delay of more than 12 months for legal strategy purposes and for purposes of what they considered an inevitable bankruptcy filing which they then ultimately filed on 1/9/21.

24. The bankruptcy case filing was of a Chapter 7 despite the fact that Kane has $30,000,000 of guaranteed income in the next 3-4 years that could pay his creditors in full, or nearly in full, with proper financial management of Kane's enormous income. The bankruptcy case was filed as a Chapter 7 instead of a Chapter 11 so that Kane could try to walk away from $15,000,000+ of debts that he incurred in 2019 that was in default on as soon as he received the money.

25. The expressed intention of Kane and Kane's counsel, as expressed in the pleadings filed in the main bankruptcy case, and in statements by Kane's counsel, is to deny Professional Bank's security interest in the stream of income from the Sharks to Kane, and to prevent Professional Bank from being paid from that stream of income from the Sharks to Kane, despite the fact that the stream of income was the expected source of payment to Professional Bank of the loan balance owed by Kane. There appears at this point to be no other meaningful source of payment for Professional Bank, and neither Kane nor his counsel have identified any other source of payment, and have not said that there is any intent by Kane or his counsel to make any payments to Professional Bank.

26. The bankruptcy filing under Chapter 7 has characteristics of "abuse" of Chapter 7 for the reasons set forth herein, and there should be a finding of a presumption of abuse.

27. Plaintiff Professional Bank is entitled to punitive and exemplary damages based on the fraud of Defendant Kane. Plaintiff seeks punitive and exemplary damages in an amount of ten times the amount of the compensatory damages ($15,000,000).

28. Plaintiff Professional Bank is entitled to attorneys' fees in litigation between Professional Bank and Kane based on the loan documents and agreements between them. Plaintiff seeks attorneys' fees in an amount according to proof.

## FIRST CLAIM FOR RELIEF
(Nondischargeable Debt)

29. Plaintiff refers to and incorporates by such reference the allegations contained elsewhere in this Complaint.

30. Professional Bank seeks a determination that the debts owed by Kane to Professional Bank are nondischargeable pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001(6) and 11 U.S.C. Section 523(a)(2)(A)and 11 U.S.C. Section 523(a)(2)(B).

11 U.S.C. Section 523(a)(2)(A) provides that debts are nondischargeable for debts:

(2) for money, property, services, or an extension,

```
                renewal, or refinancing of credit, to the extent obtained
                by--
                        (A) false pretenses, a false representation, or
                        actual fraud, other than a statement respecting
                        the debtor's or an insider's financial
                        condition;
                11 U.S.C. Section 523(a)(2)(B) provides that debts are
        nondischargeable for debts involving:
                        (B) use of a statement in writing--
                                (i) that is materially false;
                                (ii) respecting the debtor's or an
                        insider's financial condition;
                                (iii) on which the creditor to whom the
                        debtor is liable for such money, property,
                        services, or credit reasonably relied; and
                                (iv) that the debtor caused to be
                                made or published with intent to
                                deceive; or

        31. The debt owed by Kane to Professional Bank is
nondischargeable for the above reasons and based on the above
standards.

        WHEREFORE, Plaintiff Professional Bank prays for Judgment
against Defendant Kane, as prayed for below.
/
/
/
```

## SECOND CLAIM FOR RELIEF

(Security Interest in Stream of Income)

32. Plaintiff refers to and incorporates by such reference the allegations contained elsewhere in this Complaint.

33. Professional Bank seeks a determination that it has a valid priority lien on Kane's stream of income from the Sharks that must be used to pay the amounts owed to Professional Bank, and that the stream of income was and is Professional Bank's "cash collateral" that needs to be applied to the loan balance, pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001(2) and related authorities.

34. Professional Bank has a valid prior senior lien on Kane's stream of income from the Sharks that needs to be applied toward the payments owed by Kane to Professional Bank under the terms of the loan agreement.

WHEREFORE, Plaintiff Professional Bank prays for Judgment against Defendant Kane, as prayed for below.

## THIRD CLAIM FOR RELIEF

(Injunctive Relief to Require Sharks Payments)

35. Plaintiff refers to and incorporates by such reference the allegations contained elsewhere in this Complaint.

36. Professional Bank seeks injunctive relief or other equitable relief to force the payment from Sharks compensation to Kane to instead be used to repay the loan amounts owed to Professional Bank pursuant to the Security Agreement and security interest that Professional Bank has in that stream of income, pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001(7) and related authorities.

WHEREFORE, Plaintiff Professional Bank prays for Judgment against Defendant Kane, as prayed for below.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Relief)

37. Plaintiff refers to and incorporates by such reference the allegations contained elsewhere in this Complaint.

38. Professional Bank seeks declaratory relief and to obtain a declaratory judgment relating to the allegations and claims herein, pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001(9) and related authorities.

WHEREFORE, Plaintiff Professional Bank prays for Judgment against Defendant Kane, as prayed for below.

/
/
/

## FIFTH CLAIM FOR RELIEF

### (Denial of Discharge)

39. Plaintiff refers to and incorporates by such reference the allegations contained elsewhere in this Complaint.

40. Professional Bank objects to Kane receiving a discharge based on the conduct as alleged herein and based on the other conduct regarding other creditors as is contained in the main bankruptcy case file and in motions and Adversary Proceedings by other creditors, including actions to hinder, delay, and/or defraud creditors, and/or actions to transfer, remove, conceal, etc. property in which Professional Bank has a security interest, pursuant to Federal Rules of Bankruptcy Procedure, Rule 7001(4) and 11 U.S.C. Section 727, and related authorities.

WHEREFORE, Plaintiff Professional Bank prays for Judgment against Defendant Kane, as prayed for below.

## DEMAND FOR JURY TRIAL

Plaintiff Professional Bank hereby demands a jury trial on all matters that are triable by a jury.

/
/
/
/
/

## DAMAGES AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff Professional Bank prays for Judgment against Defendant Kane, as follows:

1. For all general, special, and compensatory damages in a sum according to proof at trial;

2. For punitive and exemplary damages as alleged herein;

4. For the determinations, the declaratory relief, and the injunctive relief requested in this Complaint;

4. For costs of suit incurred herein;

5. For such reasonable attorneys' fees as are recoverable according to applicable law;

6. For such other and further relief that the Court deems to be just and proper.


Dated: May 3, 2021                      LAW OFFICES OF
                                        STEPHEN G. OPPERWALL

                                        /s/ Stephen G. Opperwall
                                        _____
                                        STEPHEN G. OPPERWALL
                                        Attorneys for Creditor
                                        Professional Bank

complaint.doc.wpd